UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALFRED SINCLAIR,

       Plaintiff,                         Case No.  04-70670

v.                                             District Judge Gerald E. Rosen
                                                Magistrate Judge R. Steven Whalen

CITY OF BIRMINGHAM, et al.,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

Before the Court is Defendants' Motion for Dismissal for Failure to Present a Genuine Issue as to any Material Fact[1] [Docket #35], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons that follow, I recommend that the Motion be GRANTED and the Complaint DISMISSED WITH PREJUDICE.

**I.    FACTUAL BACKGROUND**

This case arises from the Plaintiff's arrest by officers of the Birmingham, Michigan Police Department on June 9, 2003.  On that date, at approximately 7:20 p.m., the Plaintiff was observed inside 600 N. Old Woodward in Birmingham by Kevin Milter, a member of

---

[1] Otherwise known as a motion for summary judgment.

the after-hours cleaning crew.  This was an office building that was closed to the general public at that time.  Mr. Milter called the police, and provided a description of a black male dressed in a black sweater and blue jeans, who had exited the rear door of the building. Defendant Officer Joshua Husted responded to the call, and, arriving at the rear of 600 N. Old Woodward, observed the Plaintiff, who matched the physical and clothing description given to him.  Officer Husted observed the Plaintiff attempting entry into another nearby rear door of 800 N. Old Woodward.

Officer Husted states that when the Plaintiff saw him approaching, he ran, at which point the officer told the Plaintiff to "come here."  The Plaintiff denies running, and states that he "was walking away from one business when he was called by [Husted] to come here, which he did."  *Complaint*, p.3.  Husted states that he observed the Plaintiff place an unknown object down the front of his pants.  The officer then patted the Plaintiff down for weapons, but states that "Mr. Sinclair responded by resisting Officer Husted and struggled to pull his arms away from the Officer."  *Brief in Support of Motion to Dismiss*, p.2. According to Husted, the Plaintiff then ran away.  The officers chased him, and Defendant Husted tackled him.  Plaintiff put up a struggle, but was eventually handcuffed.  While Plaintiff denies running away, he states that he "step[ped] away from defendant Husted to ask what was going on," after which he was taken to the ground and handcuffed. *Complaint*, p.3.

Plaintiff was then searched incident to his arrest for fleeing and resisting a police officer, and Officer Husted retrieved a paper towel containing a suspected quantity of crack

cocaine from Plaintiff's pocket. Both parties agree that the paper towel, along with this substance, was placed on either the trunk or the hood of the patrol car, and that Plaintiff then bent down and inhaled the paper towel in his mouth. As the officers attempted to extricate the evidence from the Plaintiff's mouth, a struggle ensued, and eventually, the Plaintiff swallowed the paper towel and the substance.

Plaintiff was taken to the Birmingham Police Department at 8:12 p.m., less than an hour after his initial encounter with the officers. Because Plaintiff had ingested suspected cocaine, Defendant Husted called St. Joseph's Hospital for advice, and took the Plaintiff to Pontiac Osteopathic Hospital, arriving there at 9:04 p.m. Plaintiff was examined and treated by Dr. Arash Armin, who administered a charcoal drink and released him at 9:20 p.m. Plaintiff was then taken back to the police station, where he was booked for breaking and entering, possession of narcotics, and resisting and obstructing a police officer.

Plaintiff pled guilty in the Oakland County Circuit Court to the charge of resisting and obstructing a police officer, and was sentenced to a term of 1 to 15 years imprisonment.

In his Complaint, filed on February 24, 2004, Plaintiff raises the following claims:

(1) Defendants Husted, St. Onge and a third officer used excessive force during Plaintiff's arrest, in violation of the Eighth Amendment.

(2) The Defendants' use of excessive force constituted assault and battery under Michigan law.

(3) Defendant Rouland's failure to properly supervise his subordinate and to see that Plaintiff received medical treatment constituted deliberate indifference in violation of the

Eighth Amendment.

(4) The City of Birmingham has municipal liability for the above claims, based on its failure to train its police officers in the use of force.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).  Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the

record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.   ANALYSIS

#### A.   Excessive Force

Plaintiff claims that Defendant Husted's use of excessive force to effectuate his arrest violated his Eighth Amendment rights. The Eighth Amendment applies to individuals who have been convicted and sentenced. A claim of excessive force brought by a free individual, such as the Plaintiff was at the time of his arrest, is analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). However, since this is a *pro se* Complaint filed by a now-incarcerated prison inmate, the Court will liberally construe it as alleging a Fourth Amendment violation.[2]

---

[2] *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), citing *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (*pro se* pleadings are held to "an especially liberal standard"); Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice").

In scrutinizing a claim of excessive force, the constitutional standard is the Fourth Amendment's requirement of reasonableness. *Graham v. Connor, supra*. That standard is objective, and is applied without reference to the officer's subjective motivations. *Id*. In *Gaddis v. Redford Township*, 364 F.3d 763,772 (6th Cir. 2004), the Court set forth the following factors to be considered:

> "Courts must apply an objective standard, looking to 'the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2]whether the suspect pose[d] an immediate threat to the safety of the officers or others, and [3] whether he was actively resisting arrest or attempting to evade arrest by flight.' *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865) (brackets added)."

This is a non-exhaustive list, and the "'proper application' of the reasonableness inquiry 'requires careful attention to the facts and circumstances of each particular case....'" *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005), quoting *Graham*, 490 U.S. at 396. The standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). A court must recognize that "police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Graham* at 397.

In the present case, the chain of events culminating in the claim of excessive force began with Officer Husted investigating a possible attempted burglary. It is undisputed that the police received information from a named source (Kevin Milter), indicating a description,

-6-

including clothing, which matched the Plaintiff, and that Plaintiff was observed lurking about the rear of the building. Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), Officer Husted properly initiated an investigative stop of Plaintiff, based on his reasonable suspicion that criminal activity was afoot. He did not need probable cause at this point, but subsequent events gave him probable cause to arrest the Plaintiff for resisting and obstructing.

While perhaps not an assaultive crime, breaking and entering is nevertheless a felony under Michigan law, and thus may be considered a serious offense. Furthermore, Husted states that he observed the Plaintiff attempting to conceal something in his waistband, which would lead a reasonable person to conclude that the Plaintiff might have a weapon, posing a threat to the safety of the officer or others.

Furthermore, the Plaintiff resisted arrest. I recognize that the Plaintiff disputes Husted's statement that he twice fled from the police. Plaintiff states that he never attempted to flee, but does concede that after Husted told him to "keep his hands in the air," the "Plaintiff step[ped] away from defendant Husted to ask what was going on," after which Husted and another officer tackled and handcuffed him. *Complaint*, p.3. Thus, while the Plaintiff might argue that there is a question of fact as to whether he fled, there is no dispute that there was at least some level of non-compliance with and resistance to the officers.

More important, however, is the fact that the Plaintiff ultimately pled guilty in state court to the charge of resisting and obstructing a police officer, and was sentenced to 1 to 15 years imprisonment. This state criminal judgment estops him from contesting the fact that

he resisted and obstructed. The doctrine of collateral estoppel generally precludes relitigation of an issue of fact or law which was previously decided in a different cause of action. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Collateral estoppel may be raised as a defense in a §1983 case where the prior issue of law or fact was decided in the context of a state criminal case. *Allen v. McCurry*, 449 U.S. 90, 104, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Successful application of the doctrine entails four requirements: (1) the issue in the prior case is identical to the issue in the current case; (2) the issue must have been actually litigated; (3) the issue must have been necessary and essential to judgment on the merits of the prior case; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceedings. *United States v. Real Property Known and Numbered as 415 E. Mitchell Ave., Cincinnati, Ohio*, 149 F.3d 472, 476 (6th Cir. 1998).

All four elements of collateral estoppel have been met in this case. Therefore, Plaintiff's Fourth Amendment claim of excessive force must be assessed in the context of his resistance to and obstruction of the police officers against whom he brings suit.

In addition, Plaintiff concedes that after he was handcuffed, he "bent down and inhaled the paper towel into his mouth." *Complaint*, p.4. Officer Husted states that he believed the paper towel contained crack cocaine, and that he attempted to retrieve it from Plaintiff's mouth "for Mr. Sinclair's own safety as well as to preserve the evidence." *Brief in Support of Motion to Dismiss*, p.4.

Considering these undisputed facts, as we must, from the viewpoint of a police officer

who must make an immediate, on-the-spot judgment, the use of force to effectuate the Plaintiff's arrest was reasonable. Further, the degree of force used was reasonably proportional to the situation as perceived by the officer. Tackling, or "taking to the ground" a suspect who is resisting arrest, and then handcuffing that individual cannot be considered unreasonable or excessive. Attempting to extricate from the Plaintiff's mouth what the officers believed was a controlled substance, and which Plaintiff admits he "inhaled," cannot be considered unreasonable, either as an attempt to preserve evidence or to protect the Plaintiff from ingesting a dangerous substance.

Plaintiff has submitted exhibits purporting to show the severity of his back injury which he alleges the Defendants caused.[3] However, even assuming the Defendants caused Plaintiff's back injury, the severity of a physical injury is not dispositive of the question of whether the degree of force used was reasonable.[4] Indeed, there are circumstances where an

---

[3] By separate order, I have granted Plaintiff's Motion to Enter Evidence/Medical Records, and I have reviewed and considered these exhibits in the context of the Motion to Dismiss.

[4] The Michigan Department of Corrections medical records submitted by Plaintiff cover a time period of July, 2004 to April, 2005, well after the events giving rise to this lawsuit. While the records indicate a possible radiculopathy (herniated disc), they do not strongly support the Plaintiff's claimed level of severity. The reports consistently note the Plaintiff's perspective of urgency as "urgent," and the medical staff's perspective as "routine." Progress notes dated January 4, 2005 indicate an unremarkable and unchanged physical examination. His treatment has been relatively conservative, with some physical therapy ordered in November of 2004, and prescriptions for prednisone and indocin, anti-inflammatory medications. In addition, the doctors who treated the Plaintiff immediately after his arrest observed no signs of physical abuse or trauma. *See Deposition of Dr. Arash Armin*, Defendants' Exhibit 4, p.40.

officer may reasonably use even deadly force. *See Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The question is whether the officers used reasonable force under the circumstances as perceived by them, filtering out the distorting effects of hindsight, and with due deference to their on-the-scene professional judgment. Here, the officers were confronted with an individual who by his own admission resisted and obstructed arrest and, even while handcuffed, attempted to destroy potential evidence by eating it. Under these facts, no jury could reasonably find in favor of the Plaintiff.

The Plaintiff also claims that the Defendants unreasonably withheld or delayed medical treatment after his arrest. The exhibits submitted by the Defendants show otherwise. Plaintiff was taken to the Birmingham Police Department at approximately 8:12 p.m. *Defendants' Exhibit 2*. Concerned about the Plaintiff having eaten suspected cocaine, Defendant Husted called St. Joseph's Hospital. Plaintiff was taken to an emergency room at 9:04 p.m., where a physical examination was conducted and a history obtained. He was given a charcoal drink for "alleged cocaine ingestion" and discharged to the Police Department at approximately 9:20 p.m. *Defendants' Exhibit 3*. The Plaintiff received timely and appropriate medical treatment, and no jury could reasonably find otherwise.[5]

Because there was no violation of Plaintiff's constitutional rights, the Defendants are

---

[5] It is an open question in the Sixth Circuit as to whether a denial of medical care claim by an arrestee is to be analyzed under the Fourth Amendment standard of objective reasonableness or the Eighth/Fourteenth Amendment standard of "deliberate indifference." *See Boone v. Spurgess*, 385 F.3d 923, 933-34 (6th Cir. 2004). This Court need not resolve that question, since in the present case, as in *Boone*, the Plaintiff loses regardless of which standard is used, given that he in fact received prompt medical attention.

also entitled to summary judgment on the basis of qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Higgason v. Stephens*, 288 F.3d 868, 876-877 (6th Cir. 2002). Under *Saucier*, the threshold question is whether a constitutional violation occurred. If it did not, a police officer acting in the course of his official duties is protected by qualified immunity.

### B. Assault and Battery

The common law tort of assault requires a showing of an "intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v. Thomas*, 189 Mich.App. 110, 119, 472 N.W.2d 16 (1991), citing *Tinkler v. Richter*, 295 Mich. 396, 401, 295 N.W. 201 (1940). The tort of battery denotes a "wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Id.* However, the Court in *VanVorous v. Burmeister*, 262 Mich.App. 467, 483, 687 N.W.2d 132 (2004), noted that "government actors may find it necessary–and are permitted–to act in ways that would, under different circumstances, subject them to liability for an intentional tort. To find for plaintiff on these [assault and battery] claims, our courts would have to determine that the officers' actions were not justified because they were not objectively reasonable under the circumstances." *See also Brewer v. Perrin*, 132 Mich.App. 520, 528, 349 N.W.2d 198 (1984) ("governmental actions which would normally constitute

intentional torts are protected by governmental immunity if those actions are justified").[6]

As discussed above, the actions of the arresting officers were objectively reasonable, and, for the reasons stated in *VanVorous* and *Brewer*, are not actionable under a state law assault and battery theory. Further, all Defendants are entitled to immunity under state law. The assault and battery claim must therefore be dismissed.

### C. Supervisory and Municipal Liability

Plaintiff brings claims against Defendant Rouland for failure to supervise the arresting officers and against the City of Birmingham for failure to train.

Under *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), § 1983 liability cannot be imposed on a theory of *respondeat superior*. In *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984), the Sixth Circuit held that at a minimum, a §1983 plaintiff must show that a supervisory official was personally involved in the alleged conduct, or at least impliedly authorized, approved and knowingly acquiesced in the unconstitutional conduct of the offending subordinate. *See also, Poe v. Haydon, supra*, 853 F.2d at 429 (it must be shown that supervisor "actively participated in or authorized" challenged conduct).

In terms of municipal liability, *Monnell* held:

> "A municipality cannot be held liable *solely* because it employs a tortfeasor - - or, in other words, a municipality cannot be held liable under § 1983 on a

---

[6] With certain exceptions not applicable to this case, both the City of Birmingham and officers and employees acting on its behalf are immune from tort liability under M.C.L. 691.1407.

*respondeat superior* theory." *Id.*, 436 U.S. at 691. (Emphasis in original).

Instead, a municipality incurs liability only if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.*; *Pembaur v. Cincinnati*, 475 U.S. 469, 477, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). In *Johnson v. City of Detroit*, 944 F.Supp. 586, 598 (E.D. Mich. 1996), the Court explained, "The requirement of an official policy distinguishes the acts of the employee from those of the municipality, ensuring that the municipality is held responsible only for the latter."

A municipal policy need not be formal or written to bring § 1983 into play. It can be found in "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute 'custom or usage' with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)(citations omitted). In addition, § 1983 liability can be based on a policy of inadequate training or supervision, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

First and foremost, there can be neither supervisory nor municipal liability if there is no constitutional tort. In this case, no reasonable jury could find that Plaintiff's constitutional rights were violated.

In addition, the Plaintiff has not set forth any facts, beyond mere conclusions, to support a finding that the City of Birmingham has any policy or custom which results in the violation of constitutional rights, or that the City has failed to properly train its police

officers. Even if it were shown that the arresting officers in this case acted improperly, both the Supreme Court and the Sixth Circuit have held that a single incident of the use of excessive force cannot by itself support an inference of a customary practice sufficient to justify municipal liability under § 1983. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Dorsey v. City of Detroit*, 858 F.2d 338, 345 (6th Cir. 1988). Likewise, under *Tuttle*, "the fact that only a single unconstitutional act is alleged supports a conclusion that the act in question was not caused by a policy or that the need for heightened training or screening was not obvious." *Johnson v. City of Detroit, supra,* 944 F.Supp. at 599.

Accordingly, the claims against Defendant Rouland and the City of Birmingham must be dismissed.

## IV.    CONCLUSION

For all the above reasons, I recommend that the Defendants' Motion for Dismissal [Docket #35] be GRANTED, and the case dismissed with prejudice.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                                  S/R. Steven Whalen
                                                  R. STEVEN WHALEN
                                                  UNITED STATES MAGISTRATE JUDGE

Dated:  September 1, 2005

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 1, 2005.


                                                  S/G.Wilson
                                                  Judicial Assistant